**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| Peter E. Bianchi,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>Rutgers, the State University<br>of New Jersey, et al.<br><br>　　　　　　Defendant. | Civil Action No. 14-131<br><br>**OPINION** |

<u>Appearances</u>

Barker, Gelfand & James
By: Todd J. Gelfand, Esquire
Linwood Greene, Suite 12
210 New Road
Linwood, NJ 08221
　　　Attorney for Plaintiff

Jackson Lewis P.C.
By: John K. Bennett, Esquire
　　Robert J. Cino, Esquire
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07690
　　　Attorneys for Defendant

**BUMB**, United States District Judge:

Peter E. Bianchi ("Plaintiff") is a police officer at

Rutgers University.  Plaintiff brought this case against Rutgers

University (collectively "Rutgers" or "Defendant") to challenge

a 20-day suspension and a written warning he received as a

result of two separate incidents.  Plaintiff argues that

Defendant violated his procedural due process rights and that he is entitled to a declaratory judgment.  Defendant filed a Motion for Summary Judgment, and Plaintiff filed a Cross-Motion for Summary Judgment.  [Docket Items 30, 34.]  For the following reasons, Rutgers' Motion for Summary Judgment will be granted and Plaintiff's Cross-Motion for Summary Judgment will be denied.

I.   Factual Background

At the relevant time, Plaintiff Peter E. Bianchi was employed as a police officer by the University of Medicine and Dentistry of New Jersey ("UMDNJ"). (Amend. Compl. ¶¶ 1,2 ).  In 2013, Plaintiff was transferred to the Rutgers University Police Department as a result of the New Jersey Medical and Health Services Restructuring Act.  (Plaintiff's Statement of Undisputed Material Facts ("PSOF") ¶ 1).  Plaintiff remains employed at the Rutgers University Police Department, the successor-in-interest to the UMDNJ Police Department.  (Amend. Compl. ¶ 2)

Plaintiff was and remains a member of the Fraternal Order of Police ("F.O.P.") Lodge 74. (PSOF ¶ 4).  As a member of F.O.P. Lodge 74, Plaintiff must grieve all discipline in accordance with the procedures outlined in the Collective Bargaining Agreement ("CBA") between F.O.P. Lodge 74 and Defendant.  (Defendant's Statement of Facts "DSOF" ¶¶ 4-11;

Collective Bargaining Agreement ("CBA") art. V, Def. Ex. A).
Id.  The CBA provides a formal, three-step grievance procedure.
F.O.P. Lodge 74 has the final decision as to when to request the
movement of any grievance or terminate the grievance.  (CBA art.
V).

As Step One, F.O.P. Lodge 74 may submit an appeal to the
Director of Public Safety, who will schedule a hearing and
render a decision.  (Id.)  As Step Two, F.O.P. Lodge 74 may
appeal to the Director of Labor Relations, who will schedule a
hearing and render a decision. (Id.)  As Step Three, arbitration
before the Public Employment Relations Commission ("PERC") is
available if the charges include suspension, demotion, or
discharge.  (Id.)  However, as both parties now admit, PERC does
not have jurisdiction over major disciplinary incidents
involving police officers, which include suspensions over 5
days.  (Pl. Opposition to Summary Judgment and in Support of Pl.
Cross- Motion for Summary Judgment ("Pl. Opp.") at 3; Def.
Motion for Summary Judgment ("Def. MSJ") at 8-9).

A.   Plaintiff's 20-day Suspension

On April 18, 2013, Plaintiff Bianchi received an order from
a dispatcher.  (PSOF ¶¶ 2,3).  Plaintiff's radio was not
working, and he responded to the dispatch asking the dispatcher
to dispatch another officer. (PSOF ¶ 3).  Plaintiff stated that

3

he did not have proper equipment to respond as backup on the call.  (Id.)  Defendant ultimately characterized the incident as follows: "Plaintiff had refused to answer a call to service, and failed to notify his supervisor that he was unwilling to perform his duties prior to his call to service. . . ."  (DSOF ¶ 29).

After the incident, Defendant initiated an Internal Affairs investigation.  (DSOF ¶ 23).  As part of the investigation, Plaintiff and F.O.P. President Richard Pinto met with Detective-Sergeant Jaimie A. Gutierrez and Detective Samuel Rodriguez. (DSOF ¶¶ 23, 24).  Plaintiff signed a form that advised him of the charges brought against him and of his right to consult with a union representative.  (DOSF ¶ 25).  Plaintiff cooperated with the investigation. (DSOF ¶ 28).  On May 31, 2013, Plaintiff received a staff disciplinary notice for refusing to answer a call to service and was issued a 20-day suspension without pay. (DSOF ¶¶ 29-30).

Plaintiff formally grieved the procedure and was represented by F.O.P. Lodge 74 in accordance with the CBA. (PSOF ¶¶ 4-6).  F.O.P. Lodge 74 waived both the Step One and Step Two Hearings.  (DSOF ¶ 33).  UMDNJ police Director Carmelo Huertas, Jr. and Labor Relations Director Abdel Kanan upheld the suspension.  (PSOF ¶ 5).

On June 5, 2013, Anthony J. Fusco, attorney for F.O.P. Lodge 74 and Plaintiff, requested arbitration of the 20-day

suspension in accordance with Step Three of the CBA.
(Arbitration Request, Def. Ex. J).  On June 11, 2013, PERC
responded with list of arbitrators.  (PERC letter, Def. Ex. K).
The next day, Mr. Fusco responded with a selection of
arbitrators.  (Fusco Arbitrator Selection Letter, Def. Ex. K).

####     1.   Essex County Complaint

Days later, Plaintiff, through Mr. Fusco, filed a complaint
for an action in lieu of prerogative writ in the Superior Court
of New Jersey, Essex County, Law Division.  (Essex Cty. Compl.,
Def. Ex. K).  In the complaint, Plaintiff requested review of
the 20 day suspension. He alleged that there was "insufficient
testimony to justify his suspension" that his "suspension . . .
[was] contrary to UMDNJ policies and rules," that his
"suspension was not for good and just cause," and that the
punishment was "excessive." (Essex Cty. Compl., Def. Ex. K).[1]

On July 29, 2013, F.O.P. Lodge 74 and Plaintiff's new
attorney, Darryl M. Saunders, requested a stay of arbitration.[2]
(Saunders Stay Request, Def. Ex. L)  Saunders, substituted in as

---

[1] Plaintiff stated in his deposition that the complaint was "a
disciplinary matter handled out of the union. . . . They filed
on my behalf not asking me."  (Deposition of Peter E. Bianchi
"Bianchi Dep." at 34:21-24, 35:1-6).

[2] At oral argument, Plaintiff's current attorney, Todd Gelfand,
represented that Plaintiff Bianchi did not know that his former
attorney had stayed the arbitration until the Defendant filed a
Motion for Summary Judgment.

an attorney of record for Anthony Fusco[3], wrote to Lorraine H. Tesauro, Director of Conciliation and Arbitration at PERC, requesting "that this matter be held in abeyance pending the civil complaints filed in the Superior Court of New Jersey, Law Division, Essex County." (Saunders Stay Request, Def. Ex. L). Defendant, through Rutgers' attorney Aron M. Schwartz, responded to the Plaintiff's request with a letter stating "The University has no objection to Mr. Saunders request" that the matter be held in abeyance pending the outcome of a civil action filed in Superior Court of New Jersey in Essex County. (Schwartz Letter Re: Stay, Def. Ex. M).

### B.   Disciplinary Warning Resulting from Patrol Car Crash

Plaintiff has also brought a complaint relating to discipline he received after he hit a cement barrier while operating a marked patrol car. (Pl Opp. at 5). Plaintiff reported the accident approximately one hour later, to his supervisor. (Id.) Plaintiff, however, did not complete a New Jersey Crash Investigation Report. (Id.) Plaintiff stated that he made a note of the accident in a written report, and that his

---

[3] Darryl M. Saunders was substituted for Anthony Fusco, the attorney who filed the original case, on June 9, 2013. (Fusco Substitution, Def. Ex. L).

supervisor did not suggest that he had to fill out a New Jersey
Crash Investigation Report.  (Id.)

Internal Affairs conducted an investigation.  (DSOF ¶ 13).
On December 19, 2012, Plaintiff and F.O.P. President Richard
Pinto met with two detectives about the infraction.  (Id.)
Plaintiff received and signed a form advising him of the charges
brought against him.  (DSOF ¶ 14).  Plaintiff answered questions
about the incident. (DSOF ¶¶ 15-17).  After the investigation,
on January 2, 2013, Plaintiff received a staff disciplinary
notice.  (DSOF ¶ 18).  The notice informed Plaintiff that he
would receive a written warning in lieu of a one-day shift
suspension.  (DSOF ¶ 19).

F.O.P. Lodge 74 filed a grievance on Plaintiff's behalf.
(DSOF ¶ 20).  The F.O.P. waived Steps One and Two of the
grievance procedure and proceeded to Step Three on the narrow
procedural issue of timeliness of the discipline.  (DSOF ¶ 21).
Ultimately, Defendant Rutgers and the F.O.P. Lodge 74
subsequently agreed to a consent award denying Plaintiff's
grievance and acknowledging that the case would not be used as
precedent in any subsequent matter.  (DSOF ¶ 22).

1.   Camden County Case

On January 1, 2014, Plaintiff, now represented by Todd
Gelfand, his current attorney, filed suit in the Superior Court
of New Jersey, Law Division, Camden County for a declaratory

judgment and action in lieu of prerogative writ.  (Camden
Compl.)[Docket Item 1].  Plaintiff sought review of the
disciplinary warning.  (Id.).  Plaintiff also brought a § 1983
claim for due process under the federal constitution.  (Id.)
Based on the federal due process claim, Defendant removed the
suit to federal court.  [Docket Item 1].


    C.  <u>Consolidation of the Essex County and Camden County
       Cases</u>

After the suit was removed to federal court, Plaintiff
combined the Essex Case, the suit involving the 20-day
suspension, with the Camden County suit involving the written
warning.  (Pl. Supp. Br. at 3.)  Plaintiff added the claims
related to the 20-day suspension to the Amended Complaint. (<u>See</u>
Amend. Compl.).

While Plaintiff's original challenge to the 20-day
suspension in Essex County was for review of the suspension, the
Amended Complaint brought a federal due process claim into the
fold.  In so doing, the suit changed in character from "appeals
to disciplinary actions" as Plaintiff Bianchi characterized them
in his deposition, to a more expansive and protracted
litigation.  (<u>See</u> Bianchi Dep. at 33:4-5).

D.   PERC Jurisdiction and Arbitration

As mentioned, Step Three of the Collective Bargaining Agreement allows the Union to request an arbitration proceeding before PERC when the charges include suspension.  However, PERC does not have jurisdiction over major disciplinary proceedings involving police officers, which include suspensions of more than five days, and has not had such jurisdiction since prior to Plaintiff's disciplinary incidents.  See Rutgers, the State Univ. of N.J., and FOP Lodge 62, 41 NJPER ¶ 35 (citing State v. State Troopers Fraternal Ass'n, 634 A.2d 478 (1993));Rutgers, the State Univ. of N.J., and Fraternal Order of Police, Superior Officers Association, 39 NJPER ¶ 47 (September 6, 2012); In The Matter of Rutgers; the State Univ. and F.O.P. Lodge No. 62, 33 NJ PER 70, 2007 WL 7563507 (August 3, 2007). The Supreme Court of New Jersey has held that permitting such arbitration "would infringe unacceptably on one of the most important managerial prerogatives" of New Jersey police. City of Jersey City v. Jersey City Police Officers Benev. Ass'n, 713 A.2d 472, 481 (1998)(citing State Troopers Fraternal Ass'n, 634 A.2d at 492).

On February 27, 2015, Rutgers reduced Plaintiff Bianchi's suspension from 20 days to 5 days.  (DSOF ¶ 38).  As Defendant wrote in its Motion for Summary Judgment, the reduction "thereby effectively [enabled the] Union . . . to elect to proceed to an arbitration hearing. . . ."  (Def. MSJ at 6).  After the

reduction of the suspension, Plaintiff Bianchi engaged in one day of arbitration on June 9, 2015.  (Pl. Dec. 1, 2015 letter to Court) [Docket Item 46].  At the time of oral argument, Plaintiff Bianchi had one day of arbitration remaining.  (Id.)

Plaintiff has not yet served his suspension.  (DSOF ¶ 31).


### E.    Instant Allegations

In this action, Plaintiff Bianchi has alleged violations of his rights to procedural due process under  42 U.S.C. § 1983 and violations of New Jersey law as recognized by N.J. Rev. Stat 10:6-2.  Plaintiff is also seeking a declaratory judgment. While Plaintiff initially brought a substantive due process claim and an action in lieu of a prerogative writ, Plaintiff consented to dismissal of those claims in his Opposition brief. (Pl. Opp. at 19-20).  Plaintiff has also moved for attorneys' fees.  (Pl. Opp. at 4, 8).


## II.  Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  14 Fed.  R. Civ.  P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law. . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . .  could not lead a rational trier of fact to find for the nonmoving party . . . ."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009))("[S]peculation and conjecture may not defeat summary judgment.").

III.  Analysis

        Defendant has moved for Summary Judgment and the Plaintiff has filed a Cross-Motion for Summary Judgment.  While some facts about the underlying disciplinary incidents are in dispute, the Court finds that there is no genuine dispute as to any material fact.  See Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court will review the party's legal arguments in turn.

A.   <u>Plaintiff's Procedural Due Process Claim.</u>

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542, (1985)(citation omitted). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006).  Plaintiff claims that his property interest in continued employment as a police officer was deprived without due process of law when he received a suspension without pay that he could not appeal through PERC. (<u>See</u> Pl. Opp. at 24).  Plaintiff also argues that he was deprived of a property interest when he received a written warning without due process of law.

1.   <u>Sufficiency of the Property Interest</u>

Plaintiff argues that suspension without pay constitutes a deprivation of a constitutionally protected property interest in his continued employment.  Defendant characterizes the deprivation differently and contends that there is no

deprivation of a protected property interest because Plaintiff is still employed.  (Def. Reply Br. at 4).

To have a property interest in a job, a person must have a legitimate entitlement to such continued employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564 (1972). "The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1078 (3d Cir. 1990)(quotations omitted). In this case, the Collective Bargaining Agreement states, and Defendant does not dispute, that discipline and dismissal from service can only be imposed for just cause.  (CBA, art. VI).  The Court finds that Plaintiff Bianchi had a legitimate entitlement to continued employment.

The next issue is whether suspension is a sufficient deprivation. The Supreme Court has not made a determination as to whether suspension without pay may constitute a deprivation of a protected property interest.  In Gilbert v. Homar, the Supreme Court assumed without deciding that a tenured university policemen's suspension without pay infringed upon a protected property interest.  520 U.S. 924, 929 (1997).  Additionally, the Third Circuit found deprivation under Pennsylvania law in Skrutski v. Marut, a non-precedential case involving a Pennsylvania police officer's suspension without pay, stating, "there is no question [the police officer plaintiff] . . . has

14

established a requisite deprivation of property." 288 F. App'x 803, 808 (3d Cir. 2008); see also Schmidt v. Creedon, 639 F.3d 587, 589-590 (3d Cir. 2011)(finding that a pre-suspension hearing in a case involving a police officer is necessary to comply with procedural due process under Pennsylvania law).

District Courts in New Jersey have found, or assumed, that suspension is sufficiently serious to cause a deprivation. For instance, in Aiellos v. Zisa, a court in this district found that a New Jersey police officer who was suspend experienced a deprivation of his property interest sufficient to bring a due process claim. No. 2:09-CV-03076 WJM, 2013 WL 4016362, at *3 (D.N.J. Aug. 6, 2013). The district court wrote,

> Riotto had a protected property interest in his employment with the Hackensack Police Department. See Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1077 (3d Cir.1997) (It is "unquestionably correct ... that public employees may enjoy constitutionally protected property rights in their employment"); Citta v. Borough of Seaside Park, No. 09-865, 2010 WL 3862561, at *26 (D.N.J. Sept.27, 2010) ("[I]t is clear that Plaintiff had a property interest in his position as a police officer"). Riotto's suspension from his position thus constituted a deprivation of property.

Id. Similarly, in Vatner v. Board. of Trustees of the University. of Medicine., where a tenured professor was suspended for ten work days without pay, the district court found a deprivation of a protected property interest. No. CIV. A. 12-3339 JLL M, 2015 WL 461901, at *1 (D.N.J. Feb. 4, 2015).

Citing to the Supreme Court's decision in Gilbert and noting that the deprivation was not contested by the Defendant, the court found that the Plaintiff had met his burden of demonstrating that his suspension without pay from his tenured employment amounted to a property deprivation.  Id. at *10.

In fact, the Defendant does not cite a single federal court case holding that suspension without pay does not deprive an individual of a protected property interest, when the individual has a legitimate entitlement.[4]  This Court will follow the example of the Third Circuit and other courts of the District of New Jersey to find that suspension without pay may be a sufficient deprivation to trigger the protections of the due process clause.

However, the written warning is a different category of discipline.  The warning does not impact Plaintiff's ability to continue to work.  In Burns v. Borough of Glassboro, an

---

[4] Defendant does, however, cite a recent New Jersey Superior Court case involving Plaintiff Bianchi and the same Defendant. Bianchi v. Univ. of Med. & Dentistry of N.J., UMDNJ Pub. Safety Dep't, No. A-5742-12T3, 2014 WL 8623330, at *2 (N.J. Super. Ct. App. Div. Apr. 17, 2015).  In this case, Plaintiff Bianchi filed suit against Defendant in state court challenging a three day suspension.  Id.  The Superior Court characterized Plaintiff's interest as his interest in his employment record, and wrote that he "argues we should recognize, for the first time, a constitutional interest in being protected from any discipline." Id. at *4.  The Superior Court did not find that Bianchi had such a protected property interest.  Id.  This Court declines to use the same characterization.

unpublished procedural due process case involving a written warning, the New Jersey Superior Court, Appellate Division explained, "While a written reprimand could have some future effect on promotions, discipline, or future employment, that speculative effect is too attenuated to rise to a legitimate claim of significant entitlement warranting prior notice and a hearing."  No. A-2085-12T2, 2014 WL 923160, at *5 (N.J. Super. Ct. App. Div. Mar. 11, 2014). The court held that a written reprimand "does not directly and immediately result in deprivation of any property or liberty interest." Id.  This Court agrees with the Superior Court's reasoning in Burns, and finds that the written warning Plaintiff received is not a sufficient deprivation of a property interest to trigger the protections of the due process clause.

The Defendant's Motion for Summary Judgment on the due process claim related to the car accident and subsequent written warning will be granted. The Court now turns its analysis to the due process related to the 20-day suspension.

2.   Procedures Available to Plaintiff: 20 Day Suspension

i.   Adequacy of the Procedures

The Court must first assess whether the procedures available to Plaintiff were adequate to provide due process of

law.  "It is by now well established that 'due process, unlike

some legal rules, is not a technical conception with a fixed

content unrelated to time, place and circumstances.'"  Gilbert,

520 U.S. at 930 (quoting Cafeteria & Rest. Workers v. McElroy,

367 U.S. 886, 895 (1961)(internal quotations omitted).  Courts

must balance the following factors to determine what process is

due:

> First, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional
> or substitute procedural  safeguards; and finally,
> the Government's interest.

Gilbert, 520 U.S. at 931-32 (1997)(quoting Mathews v. Eldridge,

424 U.S. 319, 335 (1976)).

Plaintiff received a pre-termination hearing as well as the

opportunity for two post-deprivation hearings in accordance with

the CBA.  In Loudermill, the Supreme Court held that a pre-

termination hearing may be required to satisfy due process.  470

U.S. 545.  Subsequently, in Gilbert, the Court reemphasized that

due process required a balancing of interests, and held that due

process may be satisfied without a pre-termination hearing if

there is prompt post-deprivation process available.  See 520

U.S. at 930.

The first of the Mathews v. Eldridge factors is the private

interest, which requires the court to take into account "the

length" and "finality of the deprivation." Gilbert, 520 U.S. at 932 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982).  In this case, the interest at stake is the continuation of Plaintiff's pay.  Since Plaintiff was facing a temporary, twenty day suspension, his interests were less weighty than if he were facing a termination.  See id.  The Court also notes that Plaintiff was not required to serve his suspension while his appeals were ongoing.

The second factor of the Mathews v. Eldridge test involves the risk of erroneous deprivation, and the value of additional safeguards.  The Court will start with the pre-suspension hearing Plaintiff received.  The purpose of a pre-suspension hearing is to "assure that there are reasonable grounds to support the suspension without pay." Gilbert, 520 U.S. at 933. This purpose comes from Loudermill, a case involving the termination of a public employee. 470 U.S. at 545-46.  In Loudermill, the Court explained that a pre-termination hearing "should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46.  The Court held that a pre-termination hearing must include "oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to
present his side of the story." Id. at 546.

Plaintiff's meeting with Detective-Sergeant Gutierrez and
Detective Rodriguez was sufficient to constitute a pre-
deprivation hearing in the suspension context.  At this meeting,
Plaintiff, represented by his union, was given notice of the
charges against him and an opportunity to respond.  (DSOF ¶¶ 23-
25).  Thus, the meeting was sufficient to serve as an "initial
check against mistaken decisions." Loudermill, 470 U.S. at 545.

Plaintiff's hearing looks very similar to the pre-
termination hearing in Gniotek.  Gniotek v. City of
Philadelphia, 808 F.2d 241, 245-46 (3d Cir. 1986).  In that
case, the Third Circuit found that an ethics accountability
meeting with an investigator constituted a sufficient pre-
deprivation hearing for police officers who were suspended and
then terminated.  Id.  Similarly, in Solomon v. Philadelphia
Housing Authority, the court found that a pre-termination
interview where the employee was confronted with specific
allegations and given the opportunity to respond, "was all the
pre-deprivation process that was due."  143 F. App'x 447, 455
(3d Cir. 2005).

Plaintiff also had the opportunity to have two post
deprivation hearings— a Step One hearing before the Director of
Public Safety and a Step Two hearing before the Director of

20

Labor Relations.  (See CBA art. V).  The two hearings were part
of the collectively negotiated grievance procedures.  (Id.)  The
Third Circuit has held that grievance procedures established in
collective bargaining agreements may satisfy due process.  Dykes
v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1572 n.6 (3d Cir. 1995).

The procedures may satisfy due process even though F.O.P.
Lodge 74 waived the hearings.  The Third Circuit has declined to
find procedural due process violations in cases where the
employee's union settled or declined to pursue an employee's
claims, focusing on the availability of the procedures and not
the union's independent decisions.  See Jackson v. Temple Univ.
of Com. Sys. of Higher Educ., 721 F.2d 931, 933 n.1 (3d Cir.
1983)(finding no precedent for a "section 1983 action where a
union has refused to take to arbitration an employee's claim
against a public employer."); see Dykes v. Se. Pa. Transp.
Auth., 68 F.3d at 1572 (finding no procedural due process
violation where union settled claim without plaintiff's consent
and plaintiff failed to bring suit in court of common pleas);
see also Skrutski v. Marut, 288 F. App'x 803, 809 (3d Cir.
2008).

Additionally, after the union waived the two hearings,
Plaintiff, represented by his union, filed an action in lieu of
prerogative writ.  (Essex Cty. Compl.)  An action in lieu of a
prerogative writ is an action for Superior Court review

21

established pursuant to the New Jersey Constitution, and implemented by New Jersey Court Rule 4:69-1.  See Romanowski v. Brick Twp., 185 N.J. Super. 197, 203-04, 447 A.2d 1352, 1355-56 (Ch. Div. 1982).  The writ allows for a review against a municipality when there are no available administrative appeals procedures.  See id.

Plaintiff has argued the procedures available to him were per se inadequate without the option of PERC arbitration of his 20-day suspension "before a presumably neutral arbitrator." (Pl. Opp. at 25).[5]  Plaintiff points out that arbitration was part of the collectively negotiated grievance procedures held to comply with procedural due process in cases like Jackson and Dykes.[6]  However, the Court does not read either case to require arbitration in order to comply with procedural due process. Additionally, while arbitration was unavailable to Plaintiff by

---

[5] While the Court acknowledges that the suspension has been reduced to enable Plaintiff to pursue PERC arbitration, the Court does not find that the reduction was sufficiently timely to constitute prompt post-deprivation procedures, as identified in Gilbert.  See 520 U.S. at 935.  The Court will therefore address the procedures available to Plaintiff within a short period of time of the issuance of discipline.

[6] Plaintiff does not identify the cases by name, but the Court assumes that Plaintiff is discussing Jackson and Dykes.  The Third Circuit held in Dykes, "Where a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements 'even if the hearing conducted by the Employer ... [was] inherently biased.'"  Dykes 68 F.3d at 1571 (citing Jackson, 721 F.2d at 931).

22

law, Plaintiff received more procedural protection than the employees in Dykes and Jackson because Plaintiff received a pre-deprivation hearing.[7]  Given the pre-deprivation hearing, the availability of two post-deprivation hearings as an additional check against erroneous deprivation, and Plaintiff's subsequent filing in Superior Court for review, the Court fails to see how the availability of arbitration, in this case, "would have led to a different result."  See Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 223 (3d Cir. 2009).  Balancing the weight of a temporary suspension with the procedures Plaintiff received and the probable value of an additional proceeding, the Court is satisfied that the process Plaintiff received was constitutionally adequate, even without an analysis of the third Mathews v. Eldridge factor, governmental interest.[8]

The Court acknowledges that Plaintiff may have reasonably believed he was entitled to arbitration of his 20-day suspension in accordance with the CBA.  (See CBA art. V.)  The record

---

[7] In Schmidt, the Third Circuit wrote, "the issue in both Dykes and Jackson was the sufficiency of the post-deprivation union grievance procedures, not whether a pre-deprivation hearing was required. Although it appears from the facts of both cases that the employees were not provided hearings prior to their termination . . . it is apparent from our opinions in these cases that we did not consider it."  Schmidt, 639 F.3d at 597.

[8] The parties did not brief the Mathews v. Eldridge factors, and given the adequacy of the procedures, the Court does not find it necessary to guess at the governmental interests at stake.

suggests at least some confusion amongst the Plaintiff and
F.O.P. Lodge 74 as to what procedures were available to
Plaintiff.  (See CBA art. V; Fusco Arbitration Selection Letter;
Saunders Stay Request; Schwartz Letter Re: Stay).  However, even
if Plaintiff erroneously believed, based on the CBA, that he was
entitled to arbitration, Plaintiff, through Mr. Saunders, stayed
the arbitration pending the outcome of the Essex County
proceeding.  (Saunders Stay Request; Schwartz Letter Re: Stay.)
Thus, the Court is unable to see how Plaintiff was harmed by a
CBA that does not reflect the current state of the law when
Plaintiff asked the Defendant for a stay of arbitration and the
Defendant agreed.

     ii.     <u>Adequacy of Exclusive Union Representation</u>

In Plaintiff's complaint, Plaintiff argues that the
"allocation of Plaintiff Bianchi's personal rights . . . to the
exclusive control of Lodge 74 is not sufficient to safeguard
Plaintiff Bianchi's rights."  (Amend. Compl. ¶ 46).  The Court
understands this to be a procedural due process challenge to the
exclusive union representation.  Plaintiff's claim must fail as
a matter of law.

The Collective Bargaining Agreement sets out procedures for
union members, represented by F.O.P. Lodge 74, to grieve the
discipline they receive.  (CBA art. V)  The Third Circuit has
held that a "public employer may meet its obligation to provide

due process through grievance procedures established in a
collective bargaining agreement, provided, of course, that those
procedures satisfy due process." Dykes, 68 F.3d at 1571 (citing
Armstrong v. Meyers, 964 F.2d 948, 951 (9th Cir.1992).  Under
this precedent, the Court sees no procedural due process problem
with a CBA that makes provisions for exclusive union
representation and limits the ability of outside counsel to
grieve discipline.

The Superior Court looked at a similar due process claim
based on exclusive union representation in grievance proceedings
in Plaintiff Bianchi's previous case.  Bianchi v. Univ. of Med.
& Dentistry of N.J., UMDNJ Pub. Safety Dep't, No.  A-5742-12T3,
2014 WL 8623330, at *2 (N.J. Super. Ct. App. Div. Apr. 17,
2015).  The Superior Court rejected Plaintiff's procedural due
process claim and held:

> Plaintiff would have us cloak him with all of the
> benefits of union representation without any of the
> limitations necessarily imposed upon individual
> autonomy by the right to collective bargaining.  Such
> a holding would run counter to the fundamental nature
> of union membership in the public employment context
> and we decline to do so.

Id. at *4.  This Court agrees, and does not find a procedural
due process violation in the role for F.O.P. Lodge 74 outlined
in the Collective Bargaining Agreement.

iii.     <u>Action in Lieu of Prerogative Writ</u>

As noted, shortly after the issuance of Plaintiff's suspension, Plaintiff filed an action in lieu of a prerogative writ for review in Superior Court.  The review was ongoing until Plaintiff dismissed his prerogative writ claims in his Opposition to the Defendant's Motion for Summary Judgment.  (Pl. Opp. at 20).

Plaintiff's third argument relates to the Defendant's position on the availability of an action in lieu of a prerogative writ.  Plaintiff claims that "UMDNJ took the position, until after discovery, that Plaintiff Bianchi only had an appeal right through PERC which was non-existent and illusory, and indeed the Defendants steadfastly denied any right of prerogative writ review." (Pl. Opp. at 26).  Plaintiff argued that since he did not have a practical right of review under PERC, Defendant's position on prerogative writ review left him without a remedy and violated the general laws of the state of New Jersey, as actionable under N.J. Stat. Ann. 10:6-2.  (<u>Id.</u>) Defendant has responded that "only a court can deny Plaintiff's right to seek such review."  (Def. Opp. to Pl.'s Cross-Motion for Summary Judgment at 4).

This Court agrees that only a court can deny Plaintiff the right to seek prerogative writ review.  However, if Defendant unambiguously told Plaintiff that his only right of review was

26

through PERC, when Defendant knew that PERC had no jurisdiction, there could be a violation of Plaintiff's procedural due process rights.  The Court requested supplemental briefing on the issue of whether Defendant unambiguously told Plaintiff that his only option for review was through PERC.  [Docket Item 48].  After considering the supplemental briefing and the Defendant's response, the Court does not believe there is sufficient evidence, on this record, to reach this finding.  (See Pl. Supp. Br.).

Plaintiff's supplemental submission starts with Defendant's Answers to the Amended Complaint and Rule 26 Disclosures.  The Court finds that Defendant does not tell Plaintiff that his only remedy was through PERC in either submission.  Plaintiff's supplemental briefing also includes an October 17, 2014 email addressed to the Defendant from Mr. Gelfand, where Mr. Gelfand requested a settlement and stated:

> UMDNJ's position is that the only way for a police officer to appeal major discipline is through arbitration through PERC at the union's option. However even assuming that the union follows through and requests arbitration in a major disciplinary case, PERC WILL NOT HEAR IT through its arbitration procedures." [9]

---

[9] The Court observes that Plaintiff has complicated what may have otherwise been an ordinary Superior Court review of discipline by adding a procedural due process claim resulting in removal to this Court.  To the extent that Plaintiff is frustrated with the delay of litigation, the delay may be of Plaintiff's own making.

(Pl. Supp. Br., Ex. B).  Defendant represented to the Court in
its response that it did not respond to the email "due to the
outrageousness of Plaintiff's demands and the pending (at the
time) matter between these same parties before the Appellate
Division of the Superior Court of New Jersey." (Def. Response to
Supp. Br. at 3).

The Court does not find confirmation, on this record, that
Mr. Gelfand's statement reflects Rutgers' position.  In fact,
Defendant has consistently taken the position that PERC did not
have jurisdiction to review suspensions such as the one that
Plaintiff received.[10]  (See Def. MSJ at 8-9).  Additionally,
prior to this suit, Defendant was involved in a number of PERC
determinations affirming that PERC did not have jurisdiction to
review major disciplinary disputes by police officers.  See,
e.g., Rutgers, the State Univ. of N.J., and FOP Lodge 62, 41
NJPER ¶ 35; Rutgers, the State Univ. of N.J., and Fraternal
Order of Police, Superior Officers Association, 39 NJPER ¶ 47
(September 6, 2012); In The Matter of Rutgers; the State Univ.
and F.O.P. Lodge No. 62, 33 NJ PER 70, 2007 WL 7563507 (August
3, 2007).

---

[10] Moreover, it is apparent that counsel's email was in the form
of a settlement request and thus is not admissible under Federal
Rules of Evidence 408.

Finally, Plaintiff submitted an email correspondence between the Plaintiff and the members of F.O.P. Lodge 74 (not the Defendant) regarding Plaintiff's desire to engage in arbitration.  (Pl. Supp. Br., Ex. C).  The Court does not see any evidence in the correspondence relevant to the question at hand.

After careful consideration, the Court is unable to find, on this record, that Defendant's actions violated Plaintiff's right to procedural due process or state law under N.J. Stat. Ann. 10:6-2.  For the aforementioned reasons, the Defendant's Motion for Summary Judgment on procedural due process will be granted, and Plaintiff's Motion for Summary Judgment will be denied.

B.   <u>Plaintiff's Claim for Declaratory Judgment.</u>

Plaintiff also moves for a declaratory judgment, requesting a declaration from this court that:

> [T]he collectively negotiated procedures for review of a UMDNJ Police Officer's administrative discipline do not adequately safeguard the Police Officer's personal right of appeal and review of the disciplinary matter, such that a UMDNJ Police Officer subject to administrative disciplinary action may bring an action in Superior Court, Law Division, and thereby obtain judicial review of the merits of such administrative disciplinary action.

(Amend. Compl. ¶ 39)

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2210(a).  While Plaintiff brought the initial claim under the New Jersey Declaratory Judgment Act, the Federal Declaratory Judgment Act applies in Federal Court.  See Fischer & Porter Co. v. Moorco Int'l Inc., 869 F. Supp. 323, 326 (E.D. Pa. 1994).

This Court finds that Plaintiff does not have a claim appropriate for a declaratory judgment, especially now that arbitration is ongoing.  Under Article III, the availability of a declaratory judgment is limited to actual cases and controversies.  See, e.g., Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153 (3d Cir. 1995).  The "question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. at 1154 (citing Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Declaratory judgments must also be ripe, a requirement grounded, in part, in the case or controversy requirement.  Armstrong World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405,

411 n.12 (3d Cir. 1992).  For cases involving declaratory judgments, the Third Circuit has developed a three part test to determine if an action for declaratory judgment is ripe; the Court must assess "the adversity of the interests of the parties, the conclusiveness of the judicial judgment, and the practical help, or utility, of that judgment.'"  Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994)(citing Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990)).  Examination of these three factors shows that this case is not appropriate for a declaratory judgment.

The first factor, adversity of the interest, requires the court to find "a substantial threat of real harm and that the threat must remain real and immediate throughout the course of the litigation."  Presbytery, 40 F.3d at 1463 (quotations omitted).  The Court does not find such a threat of real harm at at this time.  As held, Plaintiff received adequate process.  And even if Plaintiff had not received adequate process, Plaintiff is now in the midst of an additional arbitration proceeding, and now claims to be the prevailing party.  (Pl. Opp. at 4, 13).  Plaintiff cannot have it both ways; Plaintiff cannot ask for a declaratory judgment requiring a "substantial threat of real harm" and also claim to have already prevailed on the merits.

The Court finds declaratory judgment inappropriate under the conclusiveness and utility factors as well.  The test for conclusiveness requires the court to determine whether "judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts."  Presbytery, 40 F.3d at 146. The "conflict between the parties . . . cannot be 'nebulous or contingent' but 'must have taken on fixed and final shape so that a court can see what legal issues it is deciding.'" Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands, 385 F.3d 801, 806 (3d Cir. 2004)(quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952)).  Any additional review of Plaintiff's right to appeal would be advisory while arbitration is ongoing.

This case also fails on the third factor, utility.  This factor requires the Courts to consider "whether the parties' plans of actions are likely to be affected by a declaratory judgment." Presbytery, 40 F.3d at 1469 (3d Cir. 1994)(citing Step-Saver, 912 F.2d at 649 n.9).  The Court does not believe declaratory relief in this case would materially affect the parties.  As noted, Plaintiff is already in the process of arbitration.  Moreover, Plaintiff already filed for Superior Court review of the discipline he received in this case. Plaintiff does not need this court to declare that he had such a right to file for review, as Plaintiff already filed suit.

Thus, the Court is unable to see how a declaratory judgment would have utility for either party.  The Defendant's motion for summary judgment on the declaratory judgment claim will be granted.

> C.    Plaintiff's Claim for Prevailing Party Status

Plaintiff has argued that he is a prevailing party entitled to attorney's fees and costs under § 1983 and § 1988.  (Pl. Opp. at 4).  Plaintiff argues that he is entitled to the status of prevailing party since he brought a § 1983 claim and Defendant reduced Plaintiff's suspension from 20 to 5 days, "only after Plaintiff Bianchi spent 21 months seeking to appeal and challenge" the suspension and "litigating the constitutionality of the UMDNJ policy for appealing police officers' major discipline." (Id.)  Plaintiff's Cross-Motion for Summary Judgment must be denied as a matter of law.

In order to be considered a prevailing party, the party must have "been awarded some relief by the court."  Buckhannon Bd. & Care Home, Inc. v. W. VA. Dep't of Health & Human Res., 532 U.S. 598, 598 (2001).  In Buckhannon, the Supreme Court held prevailing parties were limited to parties that had received judgments on the merits and court-ordered consent decrees, including settlement agreements enforced through consent decree. Id. ; see also Singer Mgmt. Consultants, Inc. v. Milgram, 650

F.3d 223, 228 (3d Cir. 2011)(quoting Buckhannon, 532 U.S. at
604).  After Buckhannon, the Third Circuit has explicitly stated
that "courts may not award fees based on a 'catalyst theory;' a
plaintiff does not become a 'prevailing party' solely because
his lawsuit causes a voluntary change in the Defendant's
conduct."  People Against Police Violence v. City of Pittsburgh,
520 F.3d 226, 232 (3d Cir. 2008).  In that situation, "the
change in legal relationship lacks the requisite 'judicial
imprimatur.'"  Id.  While Defendant reduced the suspension,
Plaintiff has not been awarded a judgment on the merits, nor has
the court issued a consent decree.  Therefore, Plaintiff is not
entitled to be considered a prevailing party.

Plaintiff argues that Buckhannon and accordingly People
Against Police Violence are limited to cases involving a
preliminary injunction. (Pl. Supp. Br. at 18).[11]   There is no
merit to this argument.  In Singer Management, the Third Circuit
wrote to explain the significance of Buckhannon, calling
Buckhannon a "sea change," and writing that prior to Buckhannon,
the rule in most circuits was that a plaintiff was a
"'prevailing party' if it 'achieve[d] the desired result because

---

[11] In the Defendant's response to the supplemental briefing,
Defendant argues that Plaintiff's supplemental briefing on the
issue of attorney fees should be struck, since the Plaintiff
went beyond the scope of Court's motion. (Def. Response to Supp.
Br.)  The Court declines to strike the Defendant's supplemental
briefing on attorney fees.

the lawsuit brought about a voluntary change in the Defendant's conduct.'" Singer Mgmt., 650 F.3d at 231 (quoting Buckhannon, 532 U.S. at 601-2.)  The Third Circuit explained that Buckhannon overruled the catalyst theory allowing attorney fees when Defendant voluntarily changed their behavior.  Id.  There is no suggestion in Buckhannon, nor in Singer Mgmt., that this holding was limited to cases involving preliminary injunctions. Plaintiff's theory no longer reflects the case law.

For the aforementioned reasons, the Court does not find that Plaintiff can be considered a successful claimant in order to obtain fees.  Plaintiff's Cross-Motion for Summary Judgment will be denied.


IV.  Conclusion

For the aforementioned reasons, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Cross-Motion for Summary Judgment will be denied.  An appropriate order will follow.


Date: February 2, 2016

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE


35